**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ALAN MEDA PLAN TRUSTEE, in his capacity as Initial Plan Trustee of Debtor Michael K. Schugg's First Amended Plan of Reorganization,<br><br>            Plaintiff,<br><br>vs.<br><br>SNELL & WILMER, L.L.P., a limited liability partnership,<br><br>            Defendant. | No. CV-08-1002-PHX-GMS<br><br>No. CV-08-1587-PHX-GMS<br><br>(Consolidated)<br><br>**ORDER** |

Defendant Snell & Wilmer, L.L.P. ("Snell") has moved for summary judgment, contending judicial estoppel bars Plaintiff Alan Meda's ("Meda") claims. (Dkt. # 40.) Meda has responded and cross-moved for partial summary judgment on Snell's judicial estoppel defense. (Dkt. # 63.) For the following reasons, the Court denies Snell's Motion for Summary Judgment, but grants Meda's Cross-Motion for Partial Summary Judgment.[1]

---

[1] The parties' request for oral argument is denied because the parties have had an adequate opportunity to discuss the law and evidence and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

**BACKGROUND**

**I.    The Parties**

Meda is the bankruptcy plan trustee for Debtor Michael K. Schugg's ("Schugg") First Amended Plan of Reorganization.[2] (Dkt. # 64 at ¶ 49.) Snell is a law firm that represented G. Grant Lyon ("Lyon"), the initial Chapter 11 trustee. (*Id.* at ¶¶ 9–10.) At the same time, Snell also represented Transnation Title Insurance Company ("TTIC"). (*Id.* at 32 ¶ 5–6; 34 ¶ 15–16.)

**II.   The Property, Schugg's Bankruptcy Petition, and the Gila River Indian Community Litigation**

On July 2001, Hill Farms Ltd. sold a 657-acre parcel of real property known as Section 16 (the "Property") to S&T Dairy, L.L.C. ("S&T"). (*Id.* at ¶ 1.) S&T also had a $1.6 million owners policy of title insurance from TTIC. (*Id.* at ¶ 2.)

In September 2003, S&T sold the Property by warranty deed to Schugg and Debra Schugg (collectively, the "Schuggs"). (*Id.* at ¶ 3.) No separate title policy was issued with this sale, (*Id.*), but later Wells Fargo Bank, N.A. ("Wells Fargo"), which financed the Schuggs' purchase of the Property, received a $4 million lenders' policy of title insurance from TTIC. (*Id.* at ¶ 4.) Meda asserts that, as a result of the S&T warranty deed and the TTIC title insurance policies, TTIC was obligated to defend against any litigation regarding claims to the Property. (Dkt. # 35 at ¶ 20.)

On July 29, 2004, through his attorney, Dale Schian ("Schian"), Schugg filed an individual voluntary Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Arizona ("Bankruptcy Court"). (Dkt. # 64 at ¶ 5.) Lyon was later appointed as the Chapter 11 trustee, and filed an application to employ Snell as his counsel in the bankruptcy, which the Bankruptcy Court granted. (*Id.* at ¶¶ 8–9). Christopher Bayley, a partner with Snell, submitted an affidavit pursuant to Bankruptcy Rule 2014 asserting that

---

[2] Schugg's First Amended Plan of Reorganization is a consolidated case of Schugg's and Debra Schugg's Chapter 11 petitions. The Bankruptcy Court consolidated the cases on January 28, 2005.

- 2 -

1  Snell believed it was "disinterested and [did] not hold or represent any interest adverse to the
2  estate." (*Id.*; Dkt. # 35 Ex. D at 3.)

3  On April 26, 2005, the Gila River Indian Community ("GRIC") asserted a claim of
4  aboriginal title to the Property by filing its Limited Objection to Final Entry of Order
5  Authorizing and Approving Stipulations Between Trustee and Wells Fargo Bank, N.A.
6  Regarding Cash Collateral and Other Related Matters. (Dkt. # 64 at ¶ 11.) The GRIC then
7  filed a Proof of Claim, asserting exclusive ownership and right of possession. (*Id.* at ¶ 12.)

8  On May 25, 2005, Lyon and Wells Fargo filed an adversary proceeding against the
9  GRIC, seeking declaratory relief stating that the Schuggs owned the Property free and clear
10 of any claims by the GRIC.[3] (*Id.* ¶ 13.) Because Lyon believed litigation against the GRIC
11 would be expensive and time consuming, Lyon sought settlement of the dispute. (*Id.* ¶ 23.)

12 On August 8, 2005, Snell proposed a tolling agreement to S&T, in which Snell, on
13 behalf of Lyon, offered to agree with S&T and TTIC to postpone any claims arising out of
14 the GRIC litigation and to toll any time-based defenses. (Dkt. # 35 at ¶ 51, Ex. G.) The
15 result, Meda alleges, is that the tolling agreement postponed the Schuggs' right to a defense
16 or indemnity by S&T or TTIC against the GRIC's claims to the Property, while the Estate
17 had to pay millions of dollars in legal fees and costs defending the GRIC's claim and
18 prosecuting the complaint. (*Id.* at ¶53.) As such, Meda contends, Snell insulated its client,
19 TTIC, from incurring substantial attorneys' fees and costs pursuant to either of the two title
20 policies that it had issued and transferred the expense of the GRIC litigation to the Estate. (*Id.*
21 at ¶ 54.)

22 After negotiation, Lyon filed a motion in November 2005 to approve the sale of the
23 Property to the GRIC for $10.3 million in settlement of the GRIC litigation. (Dkt. # 64 at ¶
24 22.) Schugg, however, filed an objection to the sale, contending $10.3 million was an
25 inadequate price. (*Id.* at ¶ 24.) The Bankruptcy Court initially approved the sale, but the

---

[3] The parties dispute whether the adversary proceeding was a quiet title action or an action for declaratory relief. The action appears to be one for declaratory relief, but, in any event, Lyon and Wells Fargo asserted ownership against the GRIC.

District Court stayed, and eventually set aside, the sale. (*Id.* at ¶ 26–28, 32.) While the sale order was pending, Snell sent several emails to Schian, noting the GRIC litigation's significant expense.[4] (*Id.* at 30–31.)

In early 2006, Schugg also hired Perkins Coie, L.L.P. ("Perkins") to represent him on issues relating to the GRIC's claim.[5]

**III.   The Reorganization Plans and Disclosure Statements**

On September 6, 2006, Schugg filed "Debtor Michael Keith Schugg's Plan of Reorganization" and the "Disclosure Statement of Michael Keith Schugg to Accompany His Plan of Reorganization." (*Id.* at ¶ 34.) On September 29, 2006, Schugg filed his "First Amended Plan of Reorganization," and on October 3, 2006, he filed his "First Amended Disclosure Statement." (*Id.* at ¶¶ 38, 40.)

The amended disclosure statement provides:

> [T]he estate owns additional personal property.  These additional assets include . . . (b) claims against the GRIC for filing a false Claim, fraud, wrongful institution of legal proceedings (malicious prosecution), slander of title and intentional interference with a contract or business expectancy; (c) claims that the Debtor may have against its grantor, S&T, for breach of warranty of title, for which S&T may be covered by the title insurance based upon a $1,600,000 owner's title insurance policy . . .
>
> K. <u>Causes of Action</u>
> The estate retains its Causes of Action to be enforced post-confirmation.  The Plan Trustee has the right to bring any Causes of Action for the benefit of the Estate.  The Debtor is not

---

[4] Snell asserts Schugg objected to the sale because he wanted to "put[] his own interests above those of creditors," while Meda argues objecting to the sale would have created a "better deal for both creditors and equity." (Dkt. ## 40 at 4, 64 at 15.) The parties likewise dispute whether setting aside the sale prejudiced the Estate. However, because the Court takes facts in the light most favorable to the nonmoving party, the Court accepts Meda's assertions for the purpose of ruling on the motion.

[5] Snell repeatedly notes Perkins's involvement and contends that Perkins, not Snell, should have advised Lyon on how to force TTIC to incur the GRIC litigation expenses. But Meda correctly asserts this fact has no relevance to the judicial estoppel issues raised in these motions. And, at any rate, there is no suggestion that Perkins was aware that Snell had represented TTIC.

> currently aware of any Causes of Action that may be brought by the Estate except as described herein. (*Id.* at ¶ 42)

The disclosure statement does not explicitly mention any claims against Snell, although Meda contends the statement is broad enough to include potential claims against Snell. (*Id.* at ¶¶ 42–44.) On November 28, 2006, the Bankruptcy Court confirmed the amended plan and appointed Meda as plan trustee. (*Id.* at ¶ 49.)

In 2007, while preparing for separate litigation against S&T and Snell, Schian discovered through an electronic docket search that Snell had represented TTIC in litigation at the same time Schian and Schugg had urged Snell to take steps to force TTIC to pay the GRIC litigation defense costs. (*Id.* SSOF at ¶ 15–16.)

Ultimately, nearly all bankruptcy creditors were paid in full under the plan, with only Robbins and Green, P.A. agreeing to a discount of $8,500 on a $599,912 pre-petition attorneys' fee claim. (*Id.* SSOF at ¶ 4.)

### IV.    Meda's Post-Confirmation Claims Against Snell

On November 25, 2008, Meda filed this Complaint against Snell, asserting claims for breach of the duties of care and loyalty in the course of Snell's representation of Lyon, the predecessor trustee. (Dkt. # 35.) These claims arise from (a) Snell's representation of Lyon in connection with the GRIC's claim of title to the Property, (b) Snell's alleged failure to cause TTIC to defend the GRIC claims, and (c) Snell's alleged failure to disclose that it was representing TTIC in other litigation at the same time it refused to press TTIC to defend the GRIC claims. (Dkt. # 64 at 31.) Because neither claim was specifically listed in Schugg's disclosure statements or included in the reorganization plan, Snell asserts Meda is judicially estopped from asserting these claims. He is not.

### DISCUSSION

### I.    Summary Judgment Standard

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Substantive

- 5 -

law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). In addition, the dispute must be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

**II. Analysis**

Snell contends judicial estoppel bars Meda's claims against Snell for breach of the duties of loyalty and care. In response, Meda argues that Snell has not demonstrated the proper elements for judicial estoppel and that, regardless of whether judicial estoppel would bar claims brought by Schugg, the doctrine does not estop Meda, as the plan trustee, from pursuing the Estate's claims.

Judicial estoppel is an equitable doctrine that prevents a party from benefitting by taking one position, but then later seeking to benefit by taking a clearly inconsistent position. *Hamilton v. State Farm Fire & Cas. Ins. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). Several factors help determine whether judicial estoppel applies.[6] *Id.* (citing *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001)). "'First, a party's later position must be 'clearly inconsistent' with its earlier position'" *Id.* (quoting *New Hampshire*, 532 U.S. at 750). In the bankruptcy context, this inconsistency may result "from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure

---

[6] Snell contends a distinction exists between judicial estoppel in the bankruptcy context and judicial estoppel in other contexts; namely, Snell argues that a party's motive is irrelevant. (Dkt. # 69 at 5–7.) Snell offers no persuasive argument why such a distinction exists. In fact, in *Hamilton*, which Snell cites in its motion, the Ninth Circuit applied the Supreme Court's general judicial estoppel analysis to the bankruptcy context. 270 F.3d at 778 (citing *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001)). Even if, as Snell asserts, judicial estoppel in bankruptcy is unique because it is necessary to "protect the judicial system, rather than the litigants," it is unclear why it would protect the judicial system to punish litigants that acted inadvertently and derived no unfair advantages. The Court will thus apply general judicial estoppel law to this bankruptcy case.

statements."*Id.* at 783.  Second, the party must have "'succeeded in persuading a court to accept that party's earlier position.'" *Id.* at 782 (quoting *New Hampshire*, 532 U.S. at 750). "'Third, the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" *Id.* (quoting *New Hampshire*, 532 U.S. at 751).  These factors are not "'inflexible prerequisites or an exhaustive formula'" because "'[a]dditional considerations may inform the doctrine's application in specific factual contexts.'" *Id.* (quoting *New Hampshire*, 532 U.S. at 751).

One additional relevant factor is whether the party to be estopped merely acted inadvertently, or whether the party acted with an intent to defraud the court or creditors. *Johnson v. Or. Dep't of Human Res. Rehab. Div.*, 141 F.3d 1361, 1369 (9th Cir. 1998) (holding that judicial estoppel does not apply if based "only on inadvertence or mistake" rather than on "chicanery") (citing *In re Corey*, 892 F.2d 829, 836 (9th Cir. 1989)); *Hefland v. Gerson*, 105 F.3d 530, 536 (9th Cir. 1997) ("It is inappropriate [to apply estoppel] when a party's prior position was based on inadvertence or mistake.").[7]  While simple mistake does not implicate judicial estoppel, a debtor need not know a claim's exact legal basis as long as he or she has enough information to suggest a possible cause of action. *See In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999).

**A. Snell Has Not Demonstrated the Elements of Judicial Estoppel.**

In this case, Snell first asserts Meda's claims against Snell are clearly inconsistent with Schugg's nondisclosure of any claims against Snell on either of the disclosure statements or reorganization plans.  Second, Snell argues this nondisclosure persuaded the Bankruptcy Court to approve the reorganization plan.  As to whether Meda (or Schugg) acted with motive to defraud and whether Meda actually defrauded any creditors, Snell contends

---

[7] Snell contends *Johnson*, 141 F.3d at 1369, is inapplicable because it is not a bankruptcy case and because *Johnson* was decided before *Hamilton*, which Snell cites in its brief.  As noted above, the Court sees no meaningful distinction between judicial estoppel generally and judicial estoppel in the bankruptcy context.  Moreover, the fact that *Hamilton* did not cite *Johnson* does not mean the *Hamilton* court rejected the *Johnson* analysis; in fact, the decisions appear consistent, and *Hamilton* simply may have declined to cite *Johnson*.

1 these factors are not dispositive. Even assuming *arguendo* that Meda's claims are clearly
2 inconsistent with Schugg's reorganization plan and that nondisclosure persuaded the
3 Bankruptcy Court to accept it, judicial estoppel is still inappropriate because Schugg's
4 omission was inadvertent and imposed no unfair detriment.

5 Schugg's omission was inadvertent because Schugg did not know he had claims
6 against Snell when the plan was filed. Neither Schugg or Schian knew Snell was
7 representing TTIC at the same time Snell negotiated the tolling agreement that shielded TTIC
8 from paying the GRIC litigation costs. Schian became aware of the alleged conflict-of-
9 interest only through a review of the electronic docketing system in 2007. Only at that time
10 did Schugg become aware of claims against Snell for breach of the duty of loyalty.

11 Snell contends Schugg had enough knowledge about the underlying facts that Schugg
12 should have been able to list potential claims against Snell in its reorganization plan and
13 disclosure statements. In other words, Snell argues knowledge of the tolling agreement was
14 sufficient. However, this knowledge, which Meda admits Schugg possessed, does not imply
15 any arguments based on Snell's alleged conflict-of-interest. The fact that Snell represented
16 TTIC at the same time it represented Lyon colors what duties Snell had and its motivation
17 for taking the actions it did.

18 Snell cites *Capitol Hill Group v. Pillsbury Winthrop Shaw Pittman, L.L.P.*, 574 F.
19 Supp.2d 143 (D. D.C. 2008), and *In re Hoffman*, 99 B.R. 929 (Bankr. N.D. Iowa 1989),
20 contending knowledge of the underlying facts giving rise to the lawsuit is sufficient, even if
21 Schugg did not know the exact legal basis for the suit. Neither *Capitol* nor *Hoffman*,
22 however, addressed the question of attorney breach of loyalty. While a party need not know
23 every factual detail to be required to state claims in a reorganization plan, the Court finds
24 Schugg did not have enough factual detail because he did not know about Snell's
25 representation of TTIC.

26 The parties debate at length whether an omission is "inadvertent" when a party does
27 not have a motive to defraud the court or creditors. The Court need not decide the exact
28 mental state required for judicial estoppel to apply. Rather, it is sufficient to note simply that

- 8 -

mere inadvertence or mistake, such as an omission resulting from a lack of factual and legal basis for a lawsuit, does not, in equity, demand judicial estoppel. *See Johnson*, 141 F.3d at 1369; *Hefland*, 105 F.3d at 536.

Finally, the Court finds no unfair prejudice. Nearly all of the creditors were paid in full, and Snell, as an estate professional, was not entitled to vote on the reorganization plan.

### B. Even if Judicial Estoppel Would Bar Schugg From Asserting Claims Against Snell, Meda Is Not Barred by Schugg's Actions.

Regardless of whether judicial estoppel would bar Schugg from asserting these claims, Meda contends that Schugg's prior omissions do not bar Meda's claims. In other words, Schugg's failure to disclose the Snell claim does not judicially estop Meda, the plan trustee, from pursuing claims on behalf of the Estate because Meda never made any inconsistent statements to the court. Research did not reveal a Ninth Circuit case directly deciding whether a plan trustee is judicially estopped by a debtor's prior omissions. Both Ninth Circuit and out-of-circuit authority, however, suggest judicial estoppel does not apply.

In *Dunmore v. United States*, a debtor brought tax refund claims against the defendant, even though the debtor had previously omitted the lawsuit as a potential claim in bankruptcy. 358 F.3d 1107, 1109–11 (9th Cir. 2004). The Ninth Circuit noted that, although the debtor's "prior omissions of his tax refund claims during . . . bankruptcy would ordinarily act as judicial estoppel against his asserting those very same claims," judicial estoppel would not bar the bankruptcy trustee from reopening the case in Bankruptcy Court to administer the unscheduled tax claims. *Id.* at 1113 n. 3. Judicial estoppel was inappropriate because allowing the trustee, rather than the debtor, to decide how to administer the claims prevented the debtor from receiving an unfair advantage. *Id.* Further, the fact that the *Dunmore* trustee was reopening a bankruptcy case, as opposed to pursuing claims directly in district court makes no difference; the point is that the bankruptcy trustee may pursue claims on behalf of the estate even if the debtor had not previously disclosed them.

Courts in other circuits have more clearly held that judicial estoppel does not bar a bankruptcy trustee from bringing claims a debtor omitted from its reorganization plan and

1  disclosure statement. First, the *New Hampshire*[8] judicial estoppel factors do not apply to a
2  bankruptcy trustee after a debtor fails to disclose claims. *In re Riazuddin* found that judicial
3  estoppel did not bar the bankruptcy trustee from reopening the bankruptcy case to allow the
4  debtors to amend their schedules, which had previously omitted a personal injury claim. 363
5  B.R. 177, 180, 188 (B.A.P. 10th Cir. 2007). Even if a debtor makes inconsistent statements,
6  a bankruptcy trustee does not necessarily affirm those inconsistent statements. Applying the
7  *New Hampshire* factors, the court noted that the bankruptcy trustee "never took an
8  inconsistent position . . . never knowingly participated in any attempt to persuade the court
9  to adopt the Debtors' position, and . . . is not responsible for any perception that the
10 Bankruptcy Court was misled. The trustee gained no unfair benefit from the Debtors' failure
11 to disclose." *Riazuddin,* 363 B.R. at 188; *see also In re Payroll Express Corp.*, 921 F. Supp.
12 1121, 1124 (S.D.N.Y. 1996) ("The fact that a trustee is subject to the same claims and
13 defenses that might have been asserted against the debtor, does not mean that those claims
14 and defenses necessarily have the same effect . . . . As the trustee in bankruptcy is distinct
15 from the pre-petition debtor, the trustee should not be foreclosed from asserting [his or her]
16 position.").

17     Second, judicial estoppel does not bar a trustee's action because only the trustee,
18 rather than the debtor, has standing to pursue such claims. Upon filing a petition for
19 bankruptcy, potential claims become assets of the bankruptcy estate. 11 U.S.C. § 541(a)(1);
20 *Riazuddin*, 363 B.R. at 188 (citing *Parker v. Wendy's Int'l Inc.*, 365 F.3d 1268, 1272 (10th
21 Cir. 2004)). A trustee then becomes the real party in interest in the debtor's claims, and a
22 trustee who does not abandon the claim or take an inconsistent position under oath cannot
23 be judicially estopped from pursuing the claims. *Riazuddin*, 363 B.R. at 188. "Although
24 general bankruptcy law establishes that the trustee does not have any more rights than the
25 debtor has, . . . any *post-petition* conduct by [the debtor], including failure to disclose an

---

[8] The Ninth Circuit adopted the *New Hampshire* factors in *Hamilton*. 270 F.3d at 782 (citing *New Hampshire*, 532 U.S. at 750–51).

asset, does not relate to the merits of [a] claim . . . because the instant the bankruptcy petition was filed, [the debtor's] claim against [the defendant] became property of the estate . . . and [the trustee] became the real party in interest." *Parker*, 365 F.3d at 1272 n. 3; *see also Miller v. Campbell*, 192 P.3d 352, 358 (Wash. 2008) ("[J]udicial estoppel generally has no application against a debtor when the bankruptcy trustee has been substituted as the real party in interest" because "the claim belongs to the trustee who has the right to pursue the debtor's entire claim.").

"[N]one of the purposes of judicial estoppel would be furthered by [applying estoppel against the trustee.]" *Payroll Express*, 921 F. Supp. at 1124. If a trustee has not actually made any inconsistent statements, then punishing the trustee does not protect judicial integrity. Moreover, because any award won by the trustee goes to the estate, rather than to the debtor individually, declining to exercise judicial estoppel will not unfairly benefit the debtor.

Snell cites *Bilstat* and *EaglePicher*, both of which applied judicial estoppel to a successor. *Bilstat* made only passing mention of the issue, stating, "In the bankruptcy context, the debtor or its successor-in-interest (in this case, the Trustee) is precluded by judicial estoppel . . . ." 314 B.R. 603, 608 (Bankr. S.D. Tex. 2004). In rejecting judicial estoppel, *Riazuddin* found *Bilstat* unpersuasive, noting that "[*Bilstat*] hold[s], *without analysis*, that the debtors' successors in interest are judicially estopped by the debtors' actions." 363 B.R. at 188 n. 53 (emphasis added). Furthermore, the unpublished *EaglePicher* opinion is inapplicable because it addressed a corporate assignee, rather than a bankruptcy trustee. 2007 WL 2265659 (D. Ariz. Aug. 6, 2007) at *4 n. 4. Although *EaglePicher* noted that generally "an assignee . . . steps into the shoes" of an assignor, it does not address the specific reasons a bankruptcy trustee does not automatically succeed to all defenses against the debtor. *Id.* An assignee succeeds to the same legal rights the assignor had, with the assignee able to act on its own behalf as if it was the assignor. Conversely, a bankruptcy trustee merely acts on behalf of the estate, not on behalf of the debtor.

In this case, Meda, as the plan trustee, is not judicially estopped. Meda never took an inconsistent position in court, never knowingly attempted to persuade the court to adopt the prior reorganization plan or disclosure statements, and did not personally gain any benefit from Schugg's prior nondisclosure. Any alleged omissions of a claim against Snell were all made by Schugg, not by Meda; in fact, Schugg filed both his original and amended reorganization plans and disclosure statements in September and October of 2006, but the Bankruptcy Court did not appoint Meda as plan trustee until November 28, 2006. Moreover, once Schugg filed his bankruptcy petition, the potential Snell claims became part of the Estate. As the plan trustee, only Meda, not Schugg, has standing to bring these claims against Snell, and Schugg's actions cannot abandon the claim for Meda. Finally, the Court finds no countervailing policy reason for imposing judicial estoppel. Estopping Meda, who never personally made any inconsistent statements, would not protect judicial integrity, particularly given that any award Meda secures belongs to the Estate, and not to Schugg.

## CONCLUSION

Summary judgment in favor of Snell is not appropriate because Meda is not judicially estopped (1) because Snell has not demonstrated the elements of judicial estoppel and (2) because, in any event, a plan trustee is not barred by a debtor's prior omissions. Furthermore, the Court will grant Meda's Cross-Motion on the judicial estoppel defense because, as a matter of law, Meda, as plan trustee, is not barred by Schugg's prior omissions as debtor.

**IT IS THEREFORE ORDERED** that Snell's Motion for Summary Judgment (Dkt. # 40) is **DENIED.**

**IT IS FURTHER ORDERED** that Meda's Cross-Motion for Partial Summary Judgment on Snell's judicial estoppel defense (Dkt. # 63) is **GRANTED**.

DATED this 28th day of September, 2009.

_G. Murray Snow_
G. Murray Snow
United States District Judge